Our single case for today is Eric Holmes v. Ron Neal and we will hear first from Mr. Benzo. Good morning. May it please the court, Michael Benzo on behalf of appellant Eric Holmes, also known as Cor and all. I would like to direct my attention at the argument this morning to the first argument regarding the application of Gonzales to this court's order in Levenberg vacating the dismissal of Mr. Holmes's petition in 2004, finding Mr. Holmes incompetent to proceed with the litigation in habeas and remanding to the district court until such time as the state offered evidence that Mr. Holmes is possibly restored to competency. After this court's order in Holmes number two, the case went back to the district court where briefing occurred discussing what was the appropriate action to be taken. The district court agreed with the parties that the case should be stayed pending evidence of competency. In 2012 or 2013, the United States Supreme Court decided the case of Ryan v. Gonzales. In Gonzales, the Supreme Court addressed a limited issue whether or not habeas petitioners litigating claims under the Anti-Terrorism and Effective Death Penalty Act are entitled to a stay under either 3599 right to counsel or under 4251 competency to stand trial are entitled to an indefinite stay of the proceedings. In finding that they are not entitled to an indefinite stay, the Supreme Court very specifically limited the application of Gonzales to those cases in which one, an indefinite stay was considered and two, the claims before the court in habeas were bound by the restrictions under the Anti-Terrorism Bill. So Mr. Benza, is it your position that a prerequisite to the application of the Ryan v. Gonzales rule is an actual finding of A, incompetence and B, likelihood of some sort of ameliorative measure? If in fact Gonzales applies, in the general case, yes. That would be the normal process under Gonzales. And so I want to add an additional complication into that which I also will be asking the state to address. The Supreme Court, as I read the Gonzales case, was concerned about a case that just got left in limbo, that was never litigated to conclusion, they felt that the state deserved an answer and so forth. What they did not consider, because they didn't need to, was how that actually gets implemented in practice. And I'm particularly concerned with the idea that an incompetent client, how to put this, that the lawyer is just off there litigating this case with no client with competence. And so I don't think the Supreme Court looked into how its concern about day in court for the state intersected with rules of professional conduct. And I wonder if you imagine perhaps one outcome of such a hearing, suppose it's found that Holmes is incompetent, as we certainly thought in 2010. At that point, I would assume a guardian ad litem could be appointed for him and the case could be litigated on his behalf just the way it happens in any case where there's a guardian. I think that is one possibility. I think, however, that depends on the nature of the underlying claim. Is this court recognizing in Levenberg that there is a legitimate issue of prosecutorial misconduct in this case? Well, that's kind of the next issue, though. We need to decide whether it was an abuse of discretion for the district court to lift the stay here, and if so, what to do about it. And if there's some question about Holmes' competence, I'm concerned about creating a system where the lawyers are just off there litigating things without a client. Absolutely. In fact, we have that very situation in this case. In Document 19, Mr. Holmes filed a pro se pleading asking this court to order us to not raise the issue of his mental retardation under Atkins v. Virginia. So we actually have that exact type of dilemma in this case, where we as the counsel for Mr. Holmes see a legitimate issue to be addressed in his habeas proceedings. We now have a direct order from our client addressed to this court, not to us, but addressed to this court, telling us to drop a legitimate claim, while at the same time asking us to put forward a claim that is arguable and has colorable merits. So what do you want to do? I think first and foremost, the issue of whether or not Gonzalez applies to this case needs to be addressed, and the district court simply did not... I'm asking you, what do you want to do? I believe that this court has the authority, even under Gonzalez... Just tell me, what do you want done? That this case should be returned to the district court until such time as Mr. Holmes is restored to competency. Well, what makes anyone think that he's ever going to be restored to competency? He may very well not be, Your Honor. Well, does that mean the stay lasts for the rest of his life? This case is exactly like Reese v. Peyton. Answer my question. Yes, sir. It would. If he never recovers his competency, does that mean that the stay will last until he dies? It would. So why is that compatible with Ryan? Why isn't what I was suggesting the right thing, to send it back to the district court for a hearing on whether he is today, in 2016, competent enough to be a client, competent enough to litigate this particular habeas corpus claim? Because I am not a trained psychiatrist. I don't know, for example, whether psychiatry itself in 2010 is the same as psychiatry in 2016. Maybe there are treatment methodologies available now that would address schizophrenia or whatever else is wrong with Holmes. And I certainly don't know, because there's no record, whether his condition has, A, deteriorated, B, stayed the same, or C, actually improved a bit since 2010. I feel that there's just no record on that. And so, if the court decides that he is as incompetent as we thought he was before, then it seems to me Ryan requires the appointment of a guardian so that we don't have this lifelong stay that Judge Posner was talking about. And I think that that would be appropriate in many types of cases. And that could happen in this case. What's wrong with it here? I think the dilemma that we face in this case is, if we go back to the district court, we have a new evaluation, we have a determination. If he's restorable then the case proceeds on the merits. And that's fine. There would be no conflict with Gonzalez. However, if he's not going to be restorable then the dilemma comes up that he has a right to litigate the merits of several of his claims. And those claims require Mr. Holmes himself. Well, but if he is gone, then this is what we do anyway. Appointing guardians for people who are no longer able to speak for themselves, whether because of age, because of trauma, because of whatever else it may be, genetic problems, we appoint guardians and we do the best we can in that instance. I think that's what the Supreme Court told us to do. And I think that that's possible. What would you say if it was a child? Suppose you have a 10 year old child who's committed some horrendous crime. Now, would you say that it would be appropriate to appoint a guardian? Yes, that would be appropriate. Now, what if you have an adult who has the mental age of 10? Again, I believe a guardian is appropriate. Well, and then what about if you have someone who, because he's crazy, he has effectively a mental age of a child? And I think, again, that's appropriate for a guardian. Well, then why isn't it appropriate in this case? The dilemma that I see us approaching with a guardian is the guardian can direct us in the best interest of the client. Look, I don't understand you. The dilemma you've described would be true if you have a child, if you have any defective defendant. So what's the difference? The problem is that a guardian does not know the answers to questions. But that's true with a 10 year old. It is true. And if competency at that level prevents the proceedings to go forward fairly, then the proceedings are stayed. That's not the way it's done, though. The way it's done is you do the best you can with the evidence that you can get. We can agree with you, for the sake of argument, that there may be some things inside Mr. Holmes' head or his memory that if he's truly completely incompetent because of mental illness, we're just never going to know. But the law deals with that. You deal with it. You use the best evidence you can. You have burdens of proof that are relevant. And you just have to accept the fact that the evidentiary record isn't as rich as you hope it would be. So I don't see why this case is all that different from the 10 year old or from the person with a mental age of 5 or whatever. We just do the best we can. And I agree. That is the normal avenue. I am looking forward down the line with this case that when we get to that point of simply being unable to answer factual predicate questions that are critical to the review of this case. And it's important that this is a... Like what? Well, the issues of what occurred during the trial. The issues of prosecutorial misconduct recognize the fact that the person involved... Wait, I don't understand you. There's no record of what occurred? There is the cold record of the case. There's a what? There is the cold record. The transcripts of the proceedings. We have made the paper record of those proceedings. What do you mean? But there are additional things that... A transcript? Yes, the transcript and the oral recordings exist. But the issues of prosecutorial misconduct and ineffective assistance of counsel are issues that are directly affected by Mr. Holmes' ability to communicate to us information that he knows. Like what? Well, in the issue of, for example, in the ineffective assistance of counsel, the failure to develop mitigating evidence, the first source for mitigating evidence is the client. And we need to be able to identify who to talk to, who to interview, what did he tell his lawyers to present, did he tell his lawyers not to present evidence. Wouldn't you get more information from the trial lawyer than you would from an individual like we have here? We certainly would get information from the trial lawyer. And if we have a guardian ad litem, it ends up you become the... The lawyer becomes the guardian ad litem, right? What is the guardian ad litem going to do? I would assume that the guardian would tell us to do what we believe to be the best interest of the case. So I think an appointment of a guardian actually is not directly necessary because we would be acting as the guardian. Well, but you can't... I mean, lawyers need clients. We don't like a system where lawyers are just off there litigating on their own steam. In fact, I would give you the example of this case. We were very generous with the expansion of the certificate of appealability, but there are quite a number of points that you've raised that I think could have been culled out without too much loss for your position. In fact, it might have even just sort of atmospherically strengthened things. And a guardian could say, you know, don't pursue this, do pursue that. You know, I recognize that the jury instructions you proposed or something like that, which does strike me as something within the trial court's discretion. So there's an interaction between client and lawyer and Mr. Holmes may not be capable of rational interaction. And I might also add, quite a few people who have guardians ad litem appointed for them are very cross about that fact. They don't think that they deserved one, and sometimes it's because they're elderly or whatever, but that's ultimately an assessment that the court needs to make. Correct. And we have those very issues, of course, with Mr. Holmes, as this court is aware through his pro se filings. Exactly. Mr. Holmes has not been a picnic to deal with, I realize. And quite frankly, it's a direct result of the mental illness. As the bleedings before this court and his pro se filings and his other litigation have demonstrated, his mental illness is front and center in everything that he does. Can I ask you two questions? I'm going to detour for just a minute so I don't forget to ask you. The first question that I'm interested in is where in the record do you get this 10-2 split on the part of the trial jury? We have looked and looked and cannot find a place. Prior to the sentencing proceeding before Judge Emkes, the defense attorney Arnold Barrett's proffer to the court that the interviews with the jurors demonstrated that the jury was 10-2. And did that get recorded in some documents? That has been accepted by the Indiana State Courts as a statement of fact, but there was no formal inquiry by the trial court of the jurors as to what their vote was. Okay, so it comes from a proffer from the lawyer based on his own interviews, not otherwise. In his interviews with the jurors, and the trial court and the Indiana courts have accepted that fact as a factual predicate. Okay, that's fine. My other question, at the end of your brief, we did consolidate these three cases and at the end of your brief, you indicate that 06-2905 remains pending in the district court. There's no final appealable order. We have no problem dismissing an appeal, whether it's for want of prosecution or want of things. But can you review for me very quickly what that is about? What's going on in the district court? Yes, so the 06 case number before this court is a second-in-time habeas petition that Mr. Holmes filed. Indiana is one of those jurisdictions whose capital scheme fell into constitutional challenge after Ring v. Arizona. Is a federal, an effort to file a second or successive habeas petition with the federal court? It is. Without getting our position to the district court that it was a, as in Martinez-Villareal, a second-in-time first habeas petition, Indiana determined to apply retroactively the Ring decision. Mr. Holmes returned to state court and filed a successor state post-conviction petition under that retroactivity application, and the Indiana Supreme Court denied him leave to file. We then filed a second-in-time petition with the district court, raising just that issue. But you have to come to this court if you're going to file a second. If it is a successor petition, we do need seek to leave this court to file, but under Martinez-Villareal, the Supreme Court determined that there is an entity known as a second-in-time first petition that can be filed initially. Right, now I realize it's a little weird. So that was the avenue that we pursued. The district court dismissed that petition, and we independently appealed that case, that's the 06 case. Those cases were consolidated in Holmes v. Levenberg. Both judgments of the district court each of those separate cases was vacated. When we returned to the district court, there were two tracks of the habeas litigation. The first initial petition was in one case number, the second petition was in a second case number. The Attorney General's filed a motion to lift this court's stay only in the first habeas petition, not in the second case. So that case remains with the district court because the district court has not lifted this court's stay in that case and sent the motion to this court to sever those two appeals because that case still remains pending in the district court. The government, in its brief, says that a number of your arguments are procedurally defaulted. Correct. In your reply brief, you don't respond. We do respond, Your Honor. Where? I didn't see that. Well, in the issue of prosecutorial misconduct, which is the big area of procedural default, the government has argued that the Indiana Supreme Court deemed this claims to be res judicata, that the claims in post-conviction were res judicata. And that is true. But the Indiana Supreme Court specifically found that the issue of prosecutorial misconduct was fully litigated on the direct appeal and specifically said that they were not going to permit this. Where in your reply brief do you discuss this?  I apologize for that, Your Honor. First argument, second argument, third argument. It's ridiculous. I didn't tell the reader anything. Now, where do you talk about... It would be at the beginning of the second argument where we address the issue in the reply brief on... So, page 9. Procedural default. Res judicata. Yes. And the Indiana Supreme Court's finding of res judicata was to determine that, in fact, the issue of prosecutorial misconduct was fully litigated. Additionally, even if the court would interpret that to be procedural default, the district court never considered the impact of Martinez v. Ryan and Trevino v. Thaler on the issue of ineffective assistance of post-conviction counsel for failure to properly litigate these claims. You raise those two cases frequently and I'm not... The state argues that you didn't even properly present that point, you know, effectiveness. When, I guess I'll put it this way, when did the state courts have an opportunity to consider whether post-conviction counsel was competent? There is no avenue in Indiana court to raise the issue of ineffective assistance of post-conviction counsel. So there's no avenue. Additionally, the issue of ineffective assistance of post-conviction counsel is not an independent habeas claim. Instead, it serves as cause and prejudice. In that there is no question in no regard to what the state court proceedings are. So Indiana is like a lot of states, though. I mean, it doesn't have an absolute prohibition against raising ineffectiveness of counsel at a later stage, you know, saving it, say, for post-conviction. I'm just talking about originally. But as is the case with federal courts, as is the case with lots of other states, it's usually impossible to do so until a post-conviction stage because you don't have a record. Correct. And Indiana is exactly the same as the federal court. You may raise an issue of ineffective assistance on direct appeal, but if that issue needs evidence outside of the record, you reserve it for your 2255. Same thing in Indiana. You reserve it for your post-conviction proceedings because you need evidence outside of the record. Mr. Banzit, if I could refocus for a second on the position, I assume it's your position, that under Gonzales, there should have been a stay for the purposes of having a court hearing? Yes. A number of the district courts. Now, would you agree that Gonzales vests the power to grant, if the stay is granted, in the district court and not the appellate court? No, it doesn't. I think this court has the power as well. Where do you find in Gonzales that the appellate court has the power Wait for the judge to finish his question, please. In Gonzales, the court specifically recognized that the lower courts have the discretion. Yes, the lower court has the discretion. So you want us to find that there was an abuse of discretion to not find that limited ability in the district court to grant the stay? Yes. In the alternative, you could remand it to the district court to have that evaluation done by the district court. Without a stay? We could even lift the stay and say litigate competency first. Because as the court is aware, one question that was never presented, because it was not relevant, was the issue of restorability. Now, as to the Ford hearing, do you believe such a hearing can be held prior to the issuing of a warrant for the execution of an individual? I would generally no. It's not right. So isn't the kind of hearing you want needed to be made, Mr. Venza, in a state court after the warrant issues? Yes. Normally that would be the way to proceed. So how is the district judge going to conduct such a hearing? The way that it is proceeding, there are two district courts that are proceeding in this fashion.  That it is a waste of judicial resources to litigate the habeas petition simply to get to the point of having a Ford hearing. Because if he's Ford incompetent, he gets to the point of having an indefinite stay of execution. Why isn't a way more in conformity with what the Supreme Court has said in Ford, and in some ways something more straightforward anyway, why isn't it just to take this a step at a time, have the hearing for Ryan v. Gonzalez purposes, if the finding is made that he's A, incompetent, and B, non-restorable, go ahead and appoint the guardian to litigate the habeas petition. That could have some impact. But the record doesn't go up in smoke. I mean, if there's been a finding of incompetence and lack of restorability, should there ever be an execution date set, then surely that evidence ports right over to the Ford hearing. And that is certainly a viable evidence. In addition to other evidence that the state may wish to introduce. I'm not saying that would be the best. And that is, in fact, if you look at Ford, which requires there to be an execution date, that would make sense. I think the logic of the district courts that have gone to the Ford hearing is to not waste the time of litigating all of those other issues just to get to the point of issuing the Ford state. I don't know if that's the appropriate way to proceed, quite frankly. I agree that there is a real problem with litigating Ford without an execution date. Since only two district courts, as far as I can tell, have done what you're asking, and Ford itself, as Judge Long was suggesting, seems to be triggered by the execution warrant. Absolutely. I agree that, in fact, that was the issue in Martinez-Villareal and in Panetti that created the second and time first petitions, is we did not raise a Ford claim in the initial habeas petition because, quite frankly, Mr. Holmes was not incompetent when we litigated that. And we would be able to go at the conclusion of the litigation and then raise for the first time the issue under Ford. Let's go back to your treatment of the issue of procedural default. So in your second argument, you have two pages about procedural default. You don't actually mention what it is that's being procedurally default. One of the things the government said was this business about Judge Amkes. And so after you finish saying what you have to say about procedural default, you start to talk about Judge Amkes. But you never say why the government is wrong to think that the issue of Judge Amkes' removal was procedurally defaulted. Because that was the evidence that was developed in part of the foundation But you don't say that in your briefs. If I was unclear, Your Honor, I apologize for that. You didn't address the issue. The issue was that the post-conviction court held the evidentiary hearing on the issue of prosecutorial misconduct and made the finding that the reason for the removal and the litigation about where the case was going to be tried was designed to remove Judge Amkes from the case. I can't figure out why that matters. Because Judge Amkes handled the case. And there's no sign that I can see in the record that she was angry at the prosecutor. She gave the prosecutor ridiculous sway, actually. And I don't see any sign that she was biased against anybody else. She presided over the trial. Why didn't this just all disappear as a relevant issue when whatever efforts they were making failed? And that's correct. As a freestanding issue, this claim would not be viable. I can't see why it's any help to you with any hat. The issue of prosecutorial misconduct is the cumulative impact of the conduct of the prosecutor. That's different. That's not the removal of Judge Amkes. That's kind of a separate point. The prosecutor injecting racial issues into the trial the passage, the closing argument, I realize you have all of those things. If you would like to save rebuttal time, you are at that point. I'd like to ask you, before you do, another question. Were you the lawyer about whom the prosecutor said he cries in every case? No, those were the trial lawyers, Your Honor. But this is one of your arguments, right? Correct. Now, what is the analysis that this court or any court should use in deciding whether that comment, you cry for every one of your clients. I may not do personal. How is one supposed to evaluate the effect of such a interchange on a jury? I agree it's very difficult to figure out what impact any one issue has on the jury. And this court is stuck with the idea of trying to establish whether or not there was prejudice to Mr. Holmes by the conduct or the misconduct of the prosecutor. And that requires to evaluate under the Berger standard whether or not the prosecutors overstepped the bounds of valid advocacy to the point of arguing issues that were designed to prejudice the jury without regards to the facts or issues before it. I don't think designed to prejudice the jury. It sounds like just a crack in the prosecutor. Because the lawyer had just said, didn't he say he would cry for his client? He was not ashamed to cry for this client. Well, isn't it natural for the government, in fact, this is correct. Yeah, he cries for all his clients. First off, there's no evidence about that. He would cry for his client, presumably cry for any of his clients, right? And that's possible, yes, Your Honor. Right? Yes. Well, if so, then the prosecutor isn't saying anything improper. I think if you couple that with the denigration of the defense in its total, the personal attacks on the defense counsel, the attacks on, as the prosecutor referred to, the SOTY defense, the other... But there was this huge fuss about the  And I think that the trial judge was in the position to realize... And you really think that comment about crying would in itself warrant a new trial? No. Not in and of itself, it would not. Because isolated instances of misconduct don't generally warrant relief. But a pervasive misconduct, that does. Thank you. Thank you, Mr. Benson. Mr. Martin. Thank you. May it please the Court. The Respondent would ask this Court to affirm the District Court's denial of habeas relief in this case. Initially, the District Court, upon present... I don't understand how execution figures in this case. If he's crazy, he can't be executed, right?  Execute insane people. Your Honor, certainly if he is found incompetent... No, no. Right. If you're insane, you can't be executed, isn't that right? Well, that's correct, Your Honor. Under the standard in Ford and in Panetti. So he's never going to be executed, right? So what's the... What's going on? Well, first of all, we need to resolve the habeas proceedings. No, no. Actually, first, we need to answer the question that Judge Posner is asking you, because the trial judge took one look at Ryan against Gonzalez and said, oh, permanent stays are no good, and slapped the 2005 decision back into place without ever making a single inquiry into Mr. Holmes' competence. Maybe it's now restorable and it wasn't in 2010. Maybe it's not restorable and a guardian needs to be appointed. There's just a complete gap. And if it turns out he really is incompetent, as we concluded he was in 2010, then the practical question that Judge Posner is raising with you is inevitable. And, you know, we're not running the state of Indiana's litigation policy, but I might... I believe Mr. Holmes is the only person left on death row under the old regime that Indiana followed. Is that correct? Your Honor, I should be able to speak to that, and I apologize. I cannot today. I am not that possessed of who still remains under the prior, before the amendments to Indiana's statute. But in any event, I don't care if there are three or four. It doesn't matter. But the fact is, though, that the Ryan opinion turns on whether somebody is either permanently incompetent, unable to be restored, at least as far as human knowledge goes at the moment, or whether that person is not. And I would be shocked in any other context to rely on information that was collected before 2010 if I'm being asked to decide about a man's condition in 2016. And I'm certainly not, as I said before, you know, a trained psychiatrist who would have any independent knowledge of that. Well, Your Honor, if I may return to Judge Posner's question. I perceive your question, Judge, as being what is the ultimate outcome if he is not sufficiently competent. And, of course, that outcome is not going to be that he's going to be executed. He can't be under federal law. We think, and we read Gonzales as looking at the disposition of the claims raised on federal habeas review as being distinct from the ultimate question of whether he is eligible for execution based on his competence. Which is why I said what I did. Which is why I said the only thing Ryan gets you to, though, is the question whether he is either A, competent, B, not competent, and not restorable. Those are the only options. And we have no idea on this record which one describes Mr. Holmes. And, Your Honor, in response to that, again, our reading of Gonzales is that that is one factor. It's not one factor. Gonzales, it's the whole case. It's not one factor. I think what's being left out of it is that the district court has discretion to issue and there's no evidentiary basis. You don't just go into a district court and say, we're not going to give you any evidence about the only issue before you, namely his competence, but issue a stay anyway. I mean, that's abuse of discretion. You can't issue a stay with zero record. Well, in this case, as Your Honor knows, the stay was issued. So the question becomes, can the stay remain indefinite? And on this record, there's been no change in his competence. And I'm saying it was an abuse of discretion for the district court to adjudicate the question whether the stay should be lifted without inquiring into the very points that the Ryan v. Gonzales case says are dispositive. And we think the dispositive point is that if this is a record-based, fixed habeas petition, which in every way this is, there is nothing here that would warrant expansion of the record under the federal statutory provisions, and there's been a full and complete record made on these habeas claims, and there's nothing that would justify... So the logic of your argument is that lawyers litigate without a client, and I can't accept that. You think that once, you know, in the depths of time, somebody had a lawyer that it's no longer, that the Indiana rules of professional conduct don't apply anymore, and the Supreme Court was not talking about that in Ryan. They had no occasion to consider, as a practical matter, how their guidance needed to be implemented. Now we're there. We're at the next step. We have their ruling. We do have to think of how it gets implemented. I understand that, Your Honor, and I would just allude again to Judge Flom's comment to Mr. Benza that in this circumstance, when this has been a developed, the claims have been litigated, and in fact the district court has even adjudicated the claims, that in this instance, as counsel for the petitioner, Mr. Benza is moving forward in his best interest to go ahead and litigate these claims and come to a disposition on that. And Your Honor... What do you consider his mental condition to be? Not Judge Flom, but Holmes. He said not Judge Flom. Holmes. Your Honor, at this point, we discussed this some years ago, and that's another point. This is, by definition, in any reasonable interpretation, a request for an indefinite stay. I think that when you're talking about whether someone's restorable, I don't even think that that's probably a question that qualified professional people can even answer. That's just a check in the mail. There was a time that you couldn't do anything with schizophrenia, and then they figured out that for a lot of people, lithium would help, and there are countless mental disorders that were once thought to be incorrigible, that are now brought under very effective control by different medications. Whether Holmes happens to have one of them, and whether those things exist in 2016, nobody knows, because there's no You can't tell me that over the course of, say, beginning with the beginning of the 20th century up until now, the mental disorder after mental disorder has become better understood and has become addressable. Oh, I'm not saying that someone can't offer an opinion that someone might be restorable, but it's speculation even from a professional. No, it isn't. I disagree with you entirely. It fails to be speculation when he is restored, and restorable becomes something that was actually a correct speculation. I don't see that as being true at all, because if the medical profession could say, when somebody has X condition, here's the medication. I realize there's been some issue about Holmes refusing his medications, but that is something that one deals with as well. I think that you are wrong, and if he's thought to be non-restorable, I think one implements Gonzales by saying, okay, appoint a guardian. Now we have a client for the lawyer. They can decide which claims to drop, which ones to go forward with, how to litigate it, and the habeas case gets litigated, and either he wins. Maybe it's found that it was a problem that no one ever heard about advances criminality. Maybe it's a problem with the ineffectiveness of counsel in some other way. Maybe there's a prosecutorial problem, or maybe the state wins. The state says this trial was within the boundaries that AEDPA acquires, and you move on, and you issue an execution warrant, and then there's the Ford hearing. I don't know what the outcome would be, but it would certainly be litigated. Pursuing claims, dropping claims, that's what lawyers do, and it doesn't have anything to do with facts and the factual record. It has to do with strategy. When was the last time he had a mental examination? Your Honor, it was, as far as I know, the ones that were conducted when this court remanded for that to be done so that the district court could make a second determination on his competence. Before 2010, in other words. Yes, it was before 2010. That is correct. Why not have an up-to-date one? I think that gets back to the question of restorability. As long as all we have is some kind of a consensus, or maybe we have a split opinion about whether he's restorable, how many times, how periodically is the state required to evaluate the petitioner? I understand the state to be disputing whether he's even sufficiently mentally ill to be called incompetent. I just don't... We did dispute that before this court, Your Honor. I remember. But this court disagreed, and that was your finding. He was a good historian of his case, and I'll just leave that basis of some very goofy psychiatric testimony by someone who is not a psychiatrist. Remember? I'm sorry, Your Honor. Someone who is not a psychiatrist offered psychiatric testimony. And then there was this strange statement by another psychiatrist, maybe this was a real psychiatrist, who said that Holmes was sane because he could distinguish between people and the spirits that he saw in his cell. That was extremely strange, I thought. And there's no argument from me on that score, Your Honor. And I'm not here to argue that Mr. Holmes is competent today. That was our position. We still think that he understood his case well enough to make decisions about how to go forward and litigate it, despite his other odd beliefs and his odd expressions. But that issue's really not before us at this point. And our position is simply that these concerns about his competency are things that need to be brought before the state court. And Mr. Benza acts as if there's no recourse in the state courts. There is recourse in the state courts for these kinds of determinations. If he filed a petition alleging that he was incompetent to be executed, he would ask for authorization to file successive state post-conviction petitions. And these are routinely granted. We did one last year, and the petitioner was found incompetent. We didn't pursue it. We are unanimous that when the time comes, a forward hearing can take place and that the courts of Indiana are open for those proceedings. That's good. But what we have before us is his habeas corpus petition. And the question is how to move forward with that. It's been on hold until the district court thought that Ryan required her to lift stay. And we need to decide whether that was the appropriate action, what's the record that it was based on, and at some point, we will look at the merits of some of these claims that he's raising. And I'll tell you right up front, if you want to talk about that for a minute, the one that bothers me perhaps the most is counsel's failure to prevent evidence of Vance's criminal history and his violent nature. This was evidence that was not before Judge Emke. She didn't know. She was the decision maker on the sentence. And so a lot of the points that Holmes has raised on the merits are difficult ones to raise because they relate to the jury and its recommendations in a system in Indiana at the time where the judge could completely ignore whatever the jury had to say. So that's questionable. She didn't know about Vance. Your Honor, that's not accurate. She didn't know about Vance's criminal history. The evidence that they want, his criminal history, his violent nature, was not before her. Counsel at post-conviction testified that it was just never looked into. These police records, other things that would have been very easy to find, his juvenile offenses, his attempted armed robbery, his violent assault on his girlfriend. His criminal history, Your Honor, was irrelevant. It was not irrelevant because for the death penalty, it was important to make a comparison. And you can't make a comparison with only one data point in front of you. You need two. So it had to decide as they're standing in that foyer, is Vance the leader? On one end of the comparison that Your Honor alludes to is evidence of Holmes' direct participation in stabbing these victims. No. I completely disagree with you that evidence of Vance's criminality was not relevant. And on the other hand, you have what kind of evidence of what person Mr. Vance was. I am just telling you that I am completely unconvinced when we are trying to decide who was the leader and who was the follower, that we can look at only one side of that equation. And I'm also unpersuaded thinking of the standard, whether this evidence might have presented Holmes as somebody who needed to be imprisoned for life not somebody who needed to be executed. That was the decision on the table for the trial judge. And as Your Honor pointed out, for the trial judge. I disagree that this record shows that the trial judge was unaware of Michael Vance. Where can you point to me in the trial record that the trial judge knew the things about Vance that I've just ticked off? Mr. Vance had been separately tried. It doesn't matter. It's not there in the record. It's not brought before the judge in this context. If you're thinking maybe she had a recollection from Vance's trial, she wasn't even the judge of Vance's trial. Was she? No. Okay. So this is not a situation where you have these giant drug conspiracies and the judge remembers everything. The trial attorney testified in the post-conviction that he did not look into this. It wasn't even investigated. And so, Your Honor, to the extent that the record reflects any or several of those things, that's his claim of ineffective assistance of counsel. It's been adjudicated. And what we have to do now is determine whether that was an unreasonable application of clearly established federal law. I'm not sure what the interaction is between Mr. Holmes being found competent or not at this stage. I am not talking about that right now. I am jumping ahead to one of the merits points on the habeas petition that was raised, which we have not yet had occasion to consider in this court because we have found that Mr. Holmes was incompetent. But now it's before us and I'm telling you that to say that evidence of Vance's criminality is irrelevant is absurd and it's the kind of thing that would potentially tip a judge or whoever is the responsible entity toward or away from a death penalty. And, Your Honor, I guess my response to that would be that on this record and on the evidence of Holmes' guilt and the theory that was presented and supported by the evidence of Holmes' guilt, that would not have caused a reasonable probability of a different outcome at this trial and therefore the adjudication of that claim of ineffective assistance of counsel was properly adjudicated by the state courts. What do you think a reasonable probability requires? I think that it requires that it is more probable than not. And that's a legal error. That is not what Strickland requires. The Supreme Court has said over and over again that it's not a more probable than not. That instead it is something that undermines one's confidence in the outcome. A reasonable probability. You're right, Your Honor. And it can be much lower than 50%. You're correct. But I feel equally confident with my response based on that nuanced explanation of the standard. I want to talk about the prosecutorial misconduct claim briefly This prosecutor was in outrage actually, and not the crying part, but the African-Americans beating each other and other comments that are highly objectionable. Your Honor, what I want to point out to the court is the distinction between what was procedurally defaulted and what was adjudicated has to do with anything that occurred before the penalty phase was not part of the post-conviction court's determination that there had been prosecutorial misconduct. And she expressly states that in her findings of fact, which is part of the record before the court. So anything about voir dire, comments made, evidence that was argued for or against during the guilt phase, none of that was part of the nucleus of facts that supported the post-conviction court's finding. None of that was part of what? The facts. The body of facts, Your Honor, that supported the post-conviction court's finding that there was prosecutorial misconduct, which of course the Indiana Supreme Court found did not. They found that it had minimal effect. So with the voir dire stuff, you're saying that are you saying that that is procedurally defaulted? It is, Your Honor. And the injections of race also was not part of that. What was part of it was the outburst that occurred and what resulted from that over the fight over getting victim impact evidence in, which was a photograph of Teresa Blossom with her child, which the state purported to offer. And the judge is so aggravated at the prosecutor that she winds up screaming at the top of her lungs at him. And Your Honor, I would point out, we know that because we have a tape and we have testimony from his trial counsel and the other trial counsel and a third attorney who is a very established criminal defense attorney in Indiana, all of whom testified and gave their account of what occurred during that incident making any input the petitioner might have completely of no moment that unnecessary and not warranted. I really am so I know the Supreme Court used some language to that effect, but we still have an incident. And so the idea that interpretations of a record, in fact you rely very heavily on the fact that interpretations of a record might vary in so far as you say well if there's anything even somewhere in the ballpark EDPA requires us to defer to that. We understand that. We've been told that a million times in the last 20 years. But it does suggest that records can be interpreted in a number of ways and that perhaps the defendant's understanding of it might be helpful for counsel. It doesn't mean you're changing the record, it just means you're understanding it better. Your Honor, I want to move on to a couple of points. Supposing we rejected the appeal, what would be the next step? What would happen next? Well, I would assume that then petitioner if he maintains his incompetence, will file a petition with the state Supreme Court to litigate that claim. How does he do that with no execution date? Is there an execution warrant outstanding at this point? No. It stayed impending if this court were to affirm the district court another date would be set. And at that point then he would be free to challenge it. And at that point he would be what? Able to challenge competency through a state petition, Your Honor. I just wanted to point out that on the court's questions about the 10-2 deadlock, there's nowhere in the state court findings or opinions that I find that that was a factual finding of any kind. That is referred to and repeated in the opinions to state petitioner's contention. The 10-2 deadlock was not a state court finding of fact. With respect to the other appeal, Your Honor. The Indiana Supreme Court doesn't seem to have a problem with it, though. Well, I mean, as Your Honor knows, often courts will adjudicate a claim assuming for the sake of argument certain facts. Well, if somebody knew that it was contested, that could have been added to the post-conviction hearing. There could have been testimony from the lawyer who pulled the jury. There could have been affidavits from the original jurors. You know, when you don't challenge a fact, sometimes it simply becomes accepted as one of the facts of the proceeding. Well, and again, Your Honor, I think that in this instance, the fact that you had a non-recommendation moves the significance of that question. Can you say a word about, do you agree with what Mr. Benza had to say about this 06-2905 second but not successive? Thank you, Your Honor. That's what I was about to address. It appears that the district court did not enter a final judgment on the docket. It did dismiss the petition. It found that the petition was an unauthorized successive petition. We agree with that. We briefed it before this court, before the motions to consolidate. And we stand by the arguments in that brief. It is an unauthorized successive petition. And in addition, it raises only a question of state law. There was no retroactivity of anything that was involved in the Saylor decision, which is what Mr. Holmes attempts to rely upon now. Rather, after the Indiana Supreme Court has done, is consider cases on their merits when there's been a sentence of death imposed where there was a recommendation other than for death. But in cases where there was no recommendation at all, Saylor is an opposite. So they've not been granted relief. But that's a question of state law because what they're doing is applying sentence review under the Indiana Constitution. It's something that is done in every case in Indiana, criminal cases, under Appellate Rule 7B, where they apply their constitutional obligation to review and revise sentences. And so there is no federal question raised in that appeal or in that successive petition that was not authorized to be filed in the district court. Mr. Martin, help me if you can with this possible scenario. If there is a position taken by this court that there may have been an abuse of discretion in the limited area to grant a stay by the district court, could a district court following along the lines of Chief Judge Wood's concerns as I see them, about ability of defendant to cooperate with counsel, could a federalized board hearing occur on that issue in a district court? No, Your Honor. And the reason why, and I think that the district court cases that are cited by Mr. Holmes in support of that suggestion, they kind of evidence why that is not proper. He argues, and those decisions maintain that at that stage of the proceedings, it doesn't involve the state adjudications anymore. Ergo, the normal comedy and deference and basically respect for the separate jurisdictions no longer obtains. That's absurd. He's about to be executed, which is the service of a sentence been imposed by the state after he's been found guilty of these crimes. Everything about the tiers of habeas review attended that, and the state court has the right to decide in the first instance whether he is incompetent under the federal standards, then it would pass to this court. There wouldn't be a great deal of prejudice to the state, though, in that case, would there? I understand the need to address the merits here, and I respect your position on that. But looking at the if not unique, what appears to be a really troubled situation as to the competence here and what inevitably, as you suggest, if there's a warrant issued, a court hearing down the road, is the state's position, other than one must respect the comedy concerns you had, a delay in getting to the merits? Is that a prejudice to the state? Yes, Your Honor, and I think it goes to the indefiniteness that is discussed in the Gonzales opinion. Why is it prejudice if the record is so cold that it's never going to change? It's not that you can't get witnesses, it's not that people's memories are going to fade. You can keep briefing this forever as far as you're concerned. Finality is a value in and of itself, Your Honor, and I can only speak from working in a number of capital cases. This man committed these crimes as found by the state of Indiana 26 years ago. There are family members of the victims of this case that are waiting for justice, and I'm not trying to urge this court that Mr. Holmes' rights and his care under the system, as federal law requires, is unimportant compared to those rights, but the state of Indiana is the first and foremost custodian of those obligations to see that that finality is done. So that's one of them, and I think, too, the other thing that I would want to add about that point is simply that competency, as would regard being able to pursue federal habeas, which we believe doesn't exist after Gonzales, only in the rare circumstances would a district court have discretion to order stay under similar circumstances. These circumstances you say would never be appropriate. Well, when do you expect him to be executed? I'm sorry, Your Honor? When do you expect him to be executed? If this court were to affirm the denial of habeas relief, I'm sorry. There are other lawyers from my office that are better possessed of these kinds of administrative facts, but I think that within, I would say, three months, there would be a new time Mr. Holmes would file his petition for authorization to litigate his claim that he's not competent to be executed. I can only tell this court that when those petitions are filed and there's a record, they get granted. I'm sorry, Your Honor? I'm sorry. After he files his petition in the state court, if he loses, does he come back to the federal court? Well, yes. Well, isn't there something rather absurd about executing a person after he has spent 40 years in prison? That didn't make any sense, actually. I think Your Honor's question there identifies just kind of a problem with the entire administration of the system across the country. Well, if this is how it's going to work, isn't that a very strong argument against capital punishment? Or, Your Honor, the other answer to that question could be just to move more swiftly and with more finality. But Your Honor's question is well taken. I just am not in a capacity to answer that to this court in this setting. We will not put all of that on your shoulders, don't worry. Thank you, Your Honor. But anyway, I hope that I have conveyed the state's position adequately to the court. If there are further questions, we would just ask that you affirm the denial of habeas relief. Thank you. Thank you very much, Mr. Martin. Anything further, Mr. Benza? Briefing, Your Honor. Judge Wood, in answer to your question, Mr. Holmes is the only person remaining on Indiana's death row that does not have a jury verdict for death. On the issue of the ineffective assistance of counsel, the testimony about Michael Vance and his criminal history and background was not available at the trial. It was at the trial that Dr. Davis testified as to the degree of culpability of Mr. Holmes without that information. What did the defense counsel do when he spoke in closing argument about the violent history of Mr. Vance? What did he base that on? He was certainly not basing that on the evidence in the record. I don't know where that came from. He just spoke generally? He spoke generally as to that. What's critical, however, to the issue of ineffectiveness was that when Dr. Davis was given that information about Michael Vance, he testified at post-conviction that he changed his opinion. That Michael Vance, in fact, was the leader of this enterprise, was in fact the dominant figure in this enterprise, and that therefore that would have changed his testimony to the jury and to the trial judge as to Michael Vance's relative culpability. And when the post-conviction court refused to consider that under Lockett and Eddings, that's the Eighth Amendment violation. What happened to Vance? Vance received a life sentence. After being found to be the principal offender of the murder of Charles Irvin, he was sentenced to life. Thank you. Thank you very much, and you were appointed, were you not, by our court? We appreciate your assistance to the court and to your client, and we of course appreciate the argument from the state. We will take the case under advisement.